# Richmond

## VIRGINIA INSURANCE RATING BUREAU v. COMMONWEALTH OF VIRGINIA, AT THE RELATION OF STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

April 21, 1947.

Record No. 3210.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*J. Gordon Bohannan*, for the appellant.

*Oscar L. Shewmake, John J. Wicker, Jr., Vernon A. Forsberg* and *Russell H. Matthias*, for the appellee.

Eggleston, J., delivered the opinion of the court.

By the Acts of 1928, ch. 433, p. 1115,[1] the General Assembly placed under the regulation and supervision of the State Corporation Commission, the rates, premium charges, schedules, rating methods, etc., of insurers authorized to write in this State insurance against "loss or damage by fire, windstorm, tornado, hail, lightning and automobile fire and theft and all other kinds of insurance which fire insurance companies are authorized to write in this State," with certain exceptions to be presently mentioned and considered. We shall refer to this as the "Fire Rating Act."

Section 1 of the act (Michie's Code of 1942, sec. 4314(1) ) requires those insurers writing the specified types of insurance to organize and be members of a bureau, to be known as the Virginia Insurance Rating Bureau, hereinafter called the "Fire Bureau," which is to be administered under the supervision of the State Corporation Commission.

The Fire Bureau is required under section 2 of the act (Michie's Code of 1942, sec. 4314(2) ), to have its principal office in the city of Richmond where its records are to be kept and its services performed for the benefit of its members. This section further requires that the expenses of the Fire Bureau be apportioned "among its members in proportion to the gross premium income on business done in the State."

In due time the Fire Bureau was organized pursuant to the terms of the statute. For and on behalf of its members

---

[1] In particulars not material to the matter before us, the act was amended by Acts of 1930, ch. 273, p. 697, Acts of 1942, ch. 243, p. 353. As amended, the act is carried into Michie's Code of 1942, section 4314(1) *ff*.

it files with the State Corporation Commission rates, premium charges, schedules, etc., with respect to insurance written by them in this State. For its members it also collects statistical data pertinent to risks and rates, prepares and furnishes manuals of rates authorized by the State Corporation Commission, and furnishes other valuable services which we need not stop to detail.

By the Acts of 1932, ch. 231, p. 427, the General Assembly placed under the State Corporation Commission the "supervision, regulation, and fixing of the rates and charges" of insurers "issuing motor vehicle liability insurance policies" in this State. The act was amended in important respects by the Acts of 1936, ch. 144, p. 259, and as amended, is incorporated in Michie's Code of 1942 as sections 4326b1 to 4326b6, both inclusive. The records and briefs refer to this as the "Casualty Rating Act," and we shall do likewise.

We quote in full so much of sections 1 and 4 of the original and amended Casualty Rating Acts as is material to the determination of the present controversy. The italicized words were those added by the 1936 amendment:

"Section 1. Each and every * * * corporation authorized to issue motor vehicle liability insurance policies in this State insuring (a) against loss or damage resulting from accident to, or injury suffered by, any person, and for which the person insured is liable, (b) against loss by liability for damage to property resulting from the ownership, maintenance or use of any motor driven vehicle, (c) *against loss of or damage to any motor driven vehicle owned by the insured caused by collision with some stationary or moving object* (other than, * * * [a] * * * corporation otherwise required by law to be a member of some bureau in this State or whose rates or premium charges are subject to control or supervision by the State Corporation Commission), shall * * * file with the State Corporation Commission, * * * every rate manual, schedule of rates, * * * made by any such insurer, or by any rating organization of which it is a member; * * * ." (Michie's Code of 1942, sec. 4326b1.)

"Section 4. For the purpose of administering the rates and rating plan, the insurance carriers insuring against the hazards named in section one of this act shall organize a bureau, membership in which shall be a prerequisite to write the lines of insurance coming under the provisions of this act (except that the Virginia insurance rating bureau may be designated as the administrative bureau in instances in which automobile property damage *and collision insurance* is written in conjunction with automobile fire and theft insurance), which bureau shall have power to make necessary rules and regulations, subject to the approval of the State Corporation Commission, to carry out its functions. The bureau shall be located in Richmond, Virginia." (Michie's Code of 1942, sec. 4326b4.)

It will be observed that the effect of the 1936 amendment, as shown by the italicized words, was to bring within the scope of the act in item (c) what is commonly termed *collision insurance*, in addition to *personal injury* (or "public liability," as it is sometimes termed) and *property damage* insurance which had been included in items (a) and (b), respectively, under the original act.

As will be seen, section 4, *supra*, of the act, as amended (Michie's Code of 1942, sec. 4326b4), requires insurance carriers writing the types of insurance named in section 1, to organize and be members of a bureau, with its principal office in the city of Richmond, to be administered under the supervision of the State Corporation Commission.

This bureau was established under the name of Virginia Automobile Rate Administrative Bureau, and for brevity we shall refer to it as the "Casualty Bureau." It is designed to perform for its members services similar to those which the Fire Bureau performs for its members under the Fire Rating Act.

The Casualty Rating Act, unlike the Fire Rating Act, does not in terms authorize the Casualty Bureau to apportion its expenses among its members in any manner. However, the

constitution of the Casualty Bureau, which is before us as an original exhibit, requires this.[2]

Although under the broad terms of the Fire Rating Act of 1928, the State Corporation Commission might have assumed jurisdiction over automobile collision insurance when written by *fire insurance companies*, it had not at that time been given jurisdiction over such type of insurance when written by *casualty insurers*. .Being of opinion that it would be unfair to assume jurisdiction over this type of insurance and regulate the rates thereon when written by one class of carriers and not to assume it and regulate the rates thereon when written by the other class, the State Corporation Commission declined to assume jurisdiction over all automobile collision insurance until, by the 1936 amendment to the Casualty Rating Act, its authority was extended to this type of insurance when written by casualty insurers. Since the 1936 amendment it has assumed jurisdiction over automobile collision insurance when written both by fire and casualty insurers.

The State Farm Mutual Automobile Insurance Company, hereinafter called "State Farm," is an Illinois corporation, and since 1930 has been authorized to write in Virginia, and has been writing, full coverage automobile insurance policies, including bodily injury (or public liability) and property damage liability, collision, fire, theft, comprehensive and other miscellaneous automobile coverages.

Since the State Farm is authorized to write "automobile fire and theft" coverages, both sides agree that it is required by the express language of section 1 of the Fire Rating Act (Michie's Code of 1942, sec. 4314(1) ) to become a member of the Fire Bureau and to have this class of its business administered by that .body. This has been done.

---

[2] Article V of the constitution requires each member to pay an "annual membership fee of $25."

It further provides: "Any and all expenses incurred by the Bureau in excess of the annual membership fees shall be levied upon members pro ratá according to their respective proportions of the total net direct Automobile Public Liability, Property Damage and Collision premiums˙written by all members upon all˙risks in the Commonwealth of Virginia during the calendar year during which such expenses have been incurred."

With respect to the State Farm's personal injury (or public liability) and property damage coverages, both sides agree that it must belong to the Casualty Bureau. It does so.

To which of these bureaus the State Farm should belong with respect to its *collision* coverages, and which should administer this class of its business, is the pivotal issue in this proceeding. The State Farm claims that the subject-matter is within the exclusive jurisdiction of the Casualty Bureau. The Fire Bureau claims that it has jurisdiction of this class of the State Farm's business, and that the latter must contribute to this bureau's expenses on this basis, even though, for some purposes, the Casualty Bureau may likewise have jurisdiction over the subject-matter. In other words, the Fire Bureau contends that with respect to the State Farm's collision coverages the company *must* maintain a membership in that bureau, although it *may have to do likewise* with the Casualty Bureau.

At any rate, from the years 1930 through 1935, both inclusive, the State Farm paid to the Fire Bureau, for its proportion of the expenses of the latter, assessments based on its total premium income from policies written in this State, including premiums on collision coverages.

In June, 1935, the State Farm made claim on the Fire Bureau for a refund of $10,750.20, that being so much of the assessments for the years 1930 to 1935, both inclusive,[3] as had been based on its collision premium income for these years. Because of the fact that the State Corporation Commission, for the reasons stated, had not at that time assumed jurisdiction over collision coverages, this refund was granted and paid in 1936.

For the year 1936 the State Farm paid to the Fire Bureau an assessment based in part on its collision premiums. And, as the opinion of the State Corporation Commission points

---

[3] The brief of the Fire Bureau insists that this refund covered overassessments for the specific years 1933, 1934 and 1935, and that the State Farm claimed no refund for the years 1930, 1931 and 1932. The correspondence shows and the Commission's opinion states that the refund covered overassessments for the whole period.

out, while this was the subject of correspondence between the parties, the record fails to show whether any change was made in the report or assessment for that year.

For the year 1937 the State Farm again included in its report to the Fire Bureau the amount of its collision premiums, and the Fire Bureau included such income in computing its assessment against the State Farm for the latter's share of the Bureau's expenses. Subsequently the State Farm filed an amended report in which it excluded such collision premium income. On the basis of this amended report the State Farm was allowed a refund of $1,779.44, that being so much of the assessment as was based on the collision premiums for the year. The Fire Bureau claims, in substance, that it was misled by this report and on account thereof erroneously made the refund. Whether the State Farm should be required to repay this amount to the Fire Bureau, as we shall presently see, is one of the matters in controversy.

While the record and briefs are not entirely clear on the subject, we understand that the State Farm did not, for the years 1938 to 1942, both inclusive, pay assessments to the Fire Bureau based on its collision premiums. However, it is quite clear from the record that during this period the State Farm claimed immunity from assessments made on this basis, while the Fire Bureau insisted that the State Farm was liable therefor.

For the year 1943 the State Farm at first filed a report with the Fire Bureau in which it included its collision premiums, and paid its annual assessment based in part thereon. About six months later it undertook to correct the report and exclude these premiums, claiming that they had been "erroneously included" in the return for that year. It asked for a refund of $3,465.42, that being so much of the assessment as had been based thereon. The refusal of the Fire Bureau to make this refund precipitated the present proceeding.

The State Farm filed a petition with the State Corporation Commission, alleging, in substance, that by virtue of the

enactment of the Casualty Rating Act, as amended in 1936 (Michie's Code of 1942, section 4326b1 *ff.*), its collision premium income should not be included as a basis for assessing its proportion of the expenses of the Fire Bureau. It claimed that assessments against it by this bureau should be based only on premiums collected from its fire, theft and comprehensive coverages.

The State Farm further alleged that from the date the Casualty Rating Act, as amended in 1936, became effective, until recently, the Fire Bureau had acquiesced in this view and had made refunds to it of erroneous and excessive assessments levied on this basis. But, it alleged, the Fire Bureau had refused to refund the sum of $3,465.42, which was an excessive assessment for the year 1943.

It prayed that the State Corporation Commission enter an order directing the Fire Bureau to refund to it, the State Farm, the alleged erroneous assessment for the year 1943. It further prayed that it, the State Farm, be required to report to the Fire Bureau, for assesment purposes, only its premiums collected in this State from its "fire, theft and comprehensive" coverages.

The Fire Bureau filed an answer in which it insisted that notwithstanding the enactment of the Casualty Rating Act, as amended in 1936 (Michie's Code of 1942, section 4326b1 *ff.*), the State Farm was still required to contribute to the expenses of the Fire Bureau on the basis of the company's collision premium income. It denied that it had ever acceded to the State Farm's present view. Indeed, it said, until recently the State Farm had by its conduct admitted its liability for assessments made on this basis.

Consequently, the Fire Bureau denied that it should be required to make a refund to the State Farm on account of its 1943 assessment. It further alleged that the refund of $1,779.44 which it had made to the State Farm for the year 1937 was erroneous and that the State Farm should be required to repay it. Moreover, it said, the State Farm was further liable to it, the Fire Bureau, for deficiencies in its assessments for certain years in which it had failed to

report, or had erroneously reported, its collision premium collections. It alleged that the State Farm should be required to file corrected reports for these years, so that proper assessments might be made against and collected from it.

After a hearing the State Corporation Commission, in a written opinion, sustained the position of the State Farm and entered an order to that effect. From this order the present appeal has been taken.

The Commission held, in its opinion, that when the Fire Rating Act, as amended, and the Casualty Rating Act, as amended, are read together, as they should be, they manifest "a definite intention * * * to provide a method whereby insurers writing certain classes of insurance should belong to a certain bureau, whereas those writing other classes should belong to a different bureau. But in no event should the same company be required to be a member of more than one bureau as to the same class of insurance, nor should such insurer be required to pay membership dues in two bureaus for the same or similar service. Certainly the Legislature did not intend to require double membership and double expense as to the same class of insurance. We believe that such is a fair and reasonable interpretation of these statutes."

Consequently, the Commission concluded, the State Farm was not "required by law to join and pay dues to the Fire Bureau on account of its automobile collision insurance business in this State."

With respect to the State Farm's public liability or personal injury, its property damage, and its collision coverages written in this State, the Commission held that the insurance company must belong to the Casualty Bureau which should administer these classes of business, and that for this service it should contribute to the expenses of the Casualty Bureau.

With respect to the State Farm's fire, theft and comprehensive coverages written in this State, the Commission held that the insurance company must belong to the Fire Bureau which should administer these classes of business, and that for this service the insurance company should contribute to

the expenses of the Fire Bureau in proportion to the company's premiums collected from this source.

Under section 1 of the Fire Rating Act, as originally enacted in 1928, the statute is made applicable to all insurers "authorized to effect insurance against the risk of loss or damage by fire, windstorm, tornado, hail, lightning and automobile fire and theft and *all other kinds of insurance which fire insurance companies are authorized to write in this State, except insurance upon or in connection with marine insurance, other than shore marine, or transportation risks, other than fire and theft insurance on automobiles* in this State." (Acts 1928, pp. 1115, 1116. Emphasis added.)

The Fire Bureau argues that the above language in terms applies to insurers who write "all other kinds of insurance which fire insurance companies are authorized to write in this State;" that fire insurance companies are authorized to write, and do write, considerable collision insurance in the State. Hence, it says, the Fire Rating Act applies to *all writers of collision insurance,* whether they be *fire insurance* companies or *casualty* companies.

But, as the Commission's opinion points out, the broad inclusive language upon which the Fire Bureau relies is immediately followed by the exclusion clauses, "*except insurance upon* or in connection with marine insurance, other than shore marine, or *transportation risks, other than fire and theft insurance on automobiles in this State.*" (Emphasis added.) The effect of these exceptions, the Commission held, was "to exclude all classes of insurance on automobiles, except fire and theft insurance, from the regulations which otherwise would have obtained under the act."

This position, the Commission held, was further emphasized by section 15 of the Fire Rating Act, as originally enacted, which provides: "*This act shall not apply to* local mutual insurance companies and associations organized under the laws of this State conducting business only in this State and exclusively upon the assessment plan, nor to *insurance upon* or in connection with marine insurance, other than shore marine, or *transportation risks, other than fire*

*and theft insurance on automobiles."* (Acts 1928, p. 1118. Emphasis added.)

Neither the 1930 amendment to the Fire Rating Act (Acts 1930, ch. 273, p. 697) nor that of 1942 (Acts 1942, ch. 243, p. 353) affects these exceptions to or limitations upon the operation of the statute.

Moreover, as the Commission's opinion points out, when we turn to section 1 of the Casualty Rating Act of 1932, which, as we have seen, at first applied only to (a) personal injury and (b) property damage coverages (and to which collision coverage was added by the 1936 amendment), we see that its operation was excluded only as to an insurer who was "required by law to be a member of some bureau in this State or whose rates or premium charges are subject to control or supervision by the State corporation commission." (Acts 1932, p. 428.)

Since the Fire Rating Act did not apply to automobile personal injury and property damage coverages, an insurer writing such insurance was not "a member of some bureau," etc., and hence was not excluded by the above clause from the operation of the Casualty Rating Act. In other words, such an insurer became subject to the latter act.

The 1936 amendment to the Casualty Rating Act, which brought collision coverages within its scope, placed an insurer writing this type of insurance in the same category as one writing personal injury and property damage coverages. He, too, became subject to the Casualty Rating Act.

Again, as the Commission's opinion correctly points out, section 4, *supra*, of the Casualty Rating Act (Michie's Code of 1942, section 4326b4) requires insurers writing the specified types of insurance to organize and be members of the Casualty Bureau "(except that the Virginia insurance rating bureau may be designated as the administrative bureau in instances in which automobile property damage and collision insurance[4] is written in conjunction with automobile fire and theft insurance)." This exception, the Commission

---

[4] The words "and collision insurance" were added by Acts 1936, ch. 144, pp. 259, 261.

properly reasons, shows a legislative intent that insurers be spared the expense of supporting two bureaus for administering the same type of insurance.

The record before us does not disclose, nor does the Fire Bureau contend, that the State Farm has ever designated the Fire Bureau as its administrative agency under this exception.

We agree with the reasoning and conclusion of the State Corporation Commission that when these two statutes are read and construed together they do not require the State Farm to become a member of and pay dues to the Fire Bureau with respect to its automobile collision insurance business written in this State.

The appellant insists that the services rendered by the Casualty Bureau to its members, with respect to collision coverages, are not as comprehensive as those performed by the Fire Bureau. Even if this be so it is quite immaterial. Since both bureaus are under the supervision and control of the State Corporation Commission the functions and services of each may be expanded or contracted to meet their demands.

We likewise agree with the holding of the Commission that the Fire Bureau is not entitled to recover its assessments against the State Farm levied in proportion to the latter's collision premium income in the State for services rendered on a *quantum meruit* basis. The Fire Bureau's case before the Commission was premised entirely upon the theory that the statute required the State Farm to be a member of the bureau with respect to its collision business and to contribute to the latter's expense in proportion to the State Farm's income from that source. That premise, we have seen, is unsound. The statute did not require such membership or authorize such assessment.

Moreover, no claim was made in the proceeding below for compensation on a *quantum meruit* basis. No testimony was offered as to the extent or value of the services rendered.

The view we have taken necessarily disposes of the Fire Bureau's contention that the State Farm should be required to repay to the bureau the sum of $1,779.44 which the

bureau refunded to it on account of its assessment for the year 1937. It likewise disposes of the contention that the State Farm is liable to the Fire Bureau for deficiencies in the assessments for certain years in which it is claimed that the State Farm omitted to report, or incorrectly reported, its collision premium income.

The final question presented is whether the State Farm is entitled to recover of the Fire Bureau the sum of $3,465.42, that being the portion of the assessment for the year 1943 which was based on the company's collision premium income and for which the company sought and was refused a refund.

The Commission held that since the payment of this amount had been "erroneously tendered under a mistake of fact, rather than under a mistake of law," the refund should be made.

The Fire Bureau claims that it should not be compelled to make the refund, because, it says, the State Farm made the payment under the belief that it was required to do so under the provisions of the Fire Rating Act, which, it further says, under the ruling of the State Corporation Commission, here confirmed by us, was a *mistake of law* and *not a mistake of fact*. A payment made under a mistake of law, it correctly points out, is ordinarily not recoverable.

We agree with the Commission. As its opinion points out, since the eeffctive date of the 1936 amendment to the Casualty Rating Act, the State Farm has repeatedly insisted that it should not be required to report its collision premium income to the Fire Bureau, and that the latter was not the proper bureau for the administration of this class of the company's business.

We have already detailed what transpired between the State Farm and the Fire Bureau with respect to the company's reports for these years. It clearly supports the Commission's finding with respect to the attitude of the State Farm. Having over a course of years repeatedly insisted that the law did not require it to make these payments, it is extremely unlikely that the State Farm would have receded

from this position and would have admitted that it was legally bound to have made the payment for the single year of 1943. It is much more likely, as the State Farm contends, and as the Commission held, that the payment for this year was the result of the inadvertent mistake of the State Farm in including its collision premium income in its report to the Fire Bureau.

A payment mistakenly made as the result of forgetfulness or inadvertence is a mistake of fact and is recoverable "where the person to whom the payment is made is not entitled thereto and cannot in good conscience retain it." 40 Am. Jur., Payment, section 197, pp. 849, 850.

Here the equities are with the State Farm. The Fire Bureau has not altered its position as a result of the payment. It is, in effect, insisting upon retaining money to which it is not entitled under the law. Moreover, to allow it to do so would result in the State Farm being compelled to pay two bureaus for the same service, the very thing which, as we have seen, the two acts were designed to avoid.

For these reasons the order of the State Corporation Commission is

*Affirmed.*