Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and Kinser, JJ., and Whiting, Senior Justice

DAISY WOOD

v. Record No. 962082     OPINION BY JUSTICE CYNTHIA D. KINSER
                                    OCTOBER 31, 1997
BOARD OF COUNTY SUPERVISORS
OF PRINCE WILLIAM COUNTY, ET AL.

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
LeRoy F. Millette, Jr., Judge

This appeal concerns an erroneous payment of real estate taxes on a parcel of land located in Prince William County.  Because we find that an inadvertent payment is a mistake of fact which may be corrected even if the mistake was unilateral, we will affirm the lower court's judgment that the Board of County Supervisors of Prince William County (the County) can correct the mistake by refunding the erroneous payment to the payor or by crediting the payor's other tax accounts.

I.

In April 1994, GH Associates L.P. (GH) acquired two tracts of land, Parcel 26 and Parcel 27, by a deed in lieu of foreclosure.  At the time of GH's acquisition, Daisy Y. Wood (Wood) held a note secured by a first deed of trust on Parcel 27.  In addition, Parcel 27 was encumbered by delinquent real estate taxes.[1]

Parcels 26 and 27 were part of a large development in Prince William County known as the Greenhill Farm Project,

---

[1] Parcel 26 was likewise encumbered by delinquent real estate taxes in addition to a deed of trust held by Samuel M. Jones (Jones).

which was a joint venture involving various related entities. One such entity, Greenhill Farm, L.P. (Greenhill), owned eight parcels of land in the Greenhill Farm Project. Two other entities, Peterson Development Corporation (Peterson) and H/P Companies L.C. (H/P), played a central role in the management of the project. Peterson acted as a banker by maintaining a central bank account for the entities associated with the Greenhill Farm Project and by providing a line of credit when it advanced funds to them. H/P was a service company and performed accounting functions, including paying the bills of the different entities. In making these payments, H/P used funds in Peterson's central bank account. H/P then recorded these payments on separate ledgers that it kept for each entity.

In July 1994, H/P issued a check request form which in turn generated a check drawn on Peterson's account. The check, payable to the County, was for real estate taxes owed on 10 separate tax accounts. Individual tax tickets designating the real estate upon which the taxes were being paid accompanied the check. Eight of the tax tickets were for property owned by Greenhill. The remaining two tickets were for Parcels 26 and 27, GH's property. The amount of the check was $204,002.45, and of that amount, $78,637.12 was for taxes owed on Greenhill's property, and $125,365.33 was for taxes owed on Parcels 26 and 27.[2] In making this

---

[2] Out of the $125,365.33 paid on GH's accounts, $83,114.39 was for Parcel 26 and $42,250.94 was for Parcel 27.

payment, however, H/P erroneously and without Greenhill's permission used Greenhill's funds to pay the taxes on GH's property, Parcels 26 and 27. GH had no intention of paying the taxes and did not authorize or agree to the payment.

Upon realizing the mistake in August 1994, H/P contacted the County and requested that the real estate taxes paid on Parcels 26 and 27 be reversed and credited to other tax accounts for real estate owned by Greenhill. The County refused to grant H/P's request. However, following further communications, the County did agree to hold the money in escrow until the real estate taxes for Parcels 26 and 27 were paid in full, at which time the County would use the funds in escrow to credit other accounts as directed by H/P.

When Wood learned of the reversal of the payment, she demanded that the County re-credit the tax payment to Parcel 27. Wood was concerned that if the real estate taxes were still outstanding, her lien would be impaired and she would have difficulty foreclosing on the property. Wood also questioned whether the County has statutory authority to reverse delinquent tax payments to the detriment of the first lienholder.

Faced with conflicting demands, the County filed a declaratory judgment action in the court below in March 1995. In its petition, the County alleged that it can correct legitimate mistakes in the application of tax payments and that it does so routinely. However, because of

the controversy, the County requested the court to determine the proper application of the erroneous tax payments on Parcels 26 and 27.

At a hearing on June 18, 1996, the trial court determined that H/P paid the taxes by mistake without any authorization from Greenhill and that the "proper mechanism" to correct this mistake was to have the money "either refunded or applied to accounts that [Greenhill] owes money on." Accordingly, the court, by an order dated July 22, 1996, ruled as follows: (1) that the County has the authority to correct factual mistakes made in the payment of real estate taxes and can do so by refunding the payment or crediting other accounts; (2) that the party who mistakenly paid the taxes has the right to have the payment corrected; (3) that H/P's payment of GH's taxes with Greenhill's funds was an inadvertent factual mistake, and H/P has the right to direct that the payment be credited to other tax accounts; and (4) that the County has the authority to enter into the escrow agreement. Wood appeals.[3]

## II.

The only issue raised in Wood's assignment of error is whether a mistake of fact requires mutuality.[4] Wood

[3] We also awarded Jones an appeal regarding the County's statutory authority to refund or credit erroneous tax payments. However, following a settlement of his case, Jones withdrew his appeal, and that issue is no longer before us.

[4] In her petition for appeal, Wood assigned the following error:

contends that mutuality is a necessary element to relieve a party from a mistake of fact and that mutuality is absent in this case. She argues that H/P's mistake was unilateral because neither she nor the County was a party to the mistake.

"The principle upon which a right of recovery is based, in the case of money paid by mistake of fact, is well settled." W.B. Hibbs & Co. v. First Nat'l Bank of Alexandria, 133 Va. 94, 105-06, 112 S.E. 669, 673 (1922). In Hughes v. Foley, 203 Va. 904, 128 S.E.2d 261 (1962), we stated that "the right of recovery is based upon the promise to return the money which the law implies, irrespective of any actual promise, and even against the refusal to make it, whenever the circumstances are such that in equity and good conscience the money should be paid back." Id. at 906, 128 S.E.2d at 262.

---

> The trial court erred in granting a refund of taxes to the management corporation which paid taxes on behalf of a client from an account utilized by numerous separate clients when neither the taxing county or secured noteholder participated in or contributed to the mistake.

Nevertheless, Wood made the following arguments on brief and orally: GH, H/P, and Greenhill are not separate entities; no mistake of fact occurred; if there was a mistake, it resulted from negligence; and the County has no statutory authority to refund the payment. The Court will not address these issues since Wood did not include them in her assignment of error. See Hamilton Dev. Co. v. Broad Rock Club, Inc., 248 Va. 40, 44, 445 S.E.2d 140, 143 (1994) ("The language of an assignment of error may not be changed."). Furthermore, we stated in an order dated July 30, 1997, that the case would be limited to the error assigned by Wood in her petition for appeal.

In *Virginia Ins. Rating Bureau v. Commonwealth of Virginia*, 186 Va. 270, 42 S.E.2d 419 (1947), we addressed a mistake of fact in the context of whether an insurer was entitled to a refund of an assessment that it had paid to the Virginia Insurance Rating Bureau, also known as the Fire Bureau. The insurer had insisted for several years that it was not required to make payments on the basis of its automobile collision insurance premium income, but, in 1943, it inadvertently included its collision premium income in a report to the Rating Bureau. This Court held that "[a] payment mistakenly made as the result of forgetfulness or inadvertence is a mistake of fact and is recoverable" when the person receiving the payment is not entitled to it and therefore, cannot retain it. *Id.* at 283, 42 S.E.2d at 425. The fact that the insurer's mistake was unilateral did not affect our decision that it was entitled to a refund.

Wood attempts to distinguish *Virginia Insurance* by arguing that the Rating Bureau had no legitimate claim to the insurer's money whereas Prince William County was, in fact, owed the taxes on Parcel 27. However, the issue here is not whether the County is entitled to a tax payment but whether a mistake of fact in making a payment may only be corrected upon a finding of mutual mistake. If the County, through its own mistake, had erroneously applied Greenhill's payment to Parcel 27, the County would be obliged to rectify the mistake and apply the payment to the correct tax ticket, despite the fact that the County was owed the money.

Accordingly, the result should be no different just because H/P made the mistake when it tendered the payment.

Finally, we perceive no inequity in the trial court's decision.  Wood is in no worse position than she would have been if H/P had never erroneously paid the delinquent taxes on Parcel 27.  Moreover, she did not change her position as a result of the payment.  See Hibbs, 133 Va. at 106, 112 S.E. at 673 ("[M]oney paid under a mistake of fact cannot be recovered back where the payment has caused such a change in the position of the payee that it would be unjust to require him to refund.").

Accordingly, for the reasons stated above, we will affirm the judgment of the trial court.

Affirmed.